UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMPASS RESIDENTIAL AND CONSULTING, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  No. 1:23-cv-00859-JPH-MKK |
| CG-DSA, LLC, | ) ) ) |
| Defendant. | ) |

**ORDER ON MOTION TO STAY**

Compass Residential Consulting, LLC ("Compass") sold its assets to CG-DSA, LLC ("Caregiver") pursuant to an Asset Purchase Agreement. Compass alleges that Caregiver breached the Purchase Agreement when it (1) failed to provide Compass access to its books and records and (2) improperly calculated Compass's earnout payment. Dkt. 8. Caregiver has filed a motion to dismiss, or in the alternative, a motion to stay pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Because the Purchase Agreement's arbitration provision governs here, Caregiver's motion is **GRANTED**, and this case is stayed pending arbitration. Dkt. [16].

**I.
Facts and Background**

In December 2021, Compass—a provider of residential habilitation and support services for disabled individuals—agreed to sell its assets to Caregiver

1

through a Purchase Agreement.[1] Dkt. 8 at 2; Dkt. 8-1 at 6. The Purchase Agreement provides that Caregiver would pay Compass an Earnout Payment, in addition to the established purchase price, depending on Earnout Revenue as defined by the Purchase Agreement. Dkt. 8 at 2-3; Dkt. 8-1 at 20–21. The Purchase Agreement also required Caregiver to provide Compass an Earnout Statement, dkt. 8-1 at 20, which Caregiver did on April 20, 2023, dkt. 8 at 3 ¶ 19.

Section 1.7 of the Purchase Agreement outlines the process governing disputes over the Earnout Statement ("Earnout Disputes"):

> Seller [Compass] shall have from the time the Earnout Statement is received by Seller until 11:59 P.M. Eastern Time on the date that is fifteen (15) days after the date of such receipt (the "Earnout Dispute Period") to dispute the Earnout Statement (the "Earnout Dispute"). If Seller does not deliver to Purchaser [Caregiver] within the Earnout Dispute Period a written notice of the Earnout Dispute with respect to the Earnout Statement or any calculation set forth thereon (an "Earnout Dispute Notice"), the Earnout Statement shall be deemed to have been accepted and agreed to by Seller in the form in which it was delivered to Seller and shall be final and binding upon the Parties. If Seller delivers an Earnout Dispute Notice to Purchaser within the Earnout Dispute Period, which Earnout Dispute Notice shall identify the specific calculations being disputed, an explanation of Seller's rationale for such dispute, and Seller's proposed calculations for such disputed items, Purchaser and Seller shall attempt to resolve the Earnout Dispute and agree in writing upon the final content of the disputed Earnout Statement within thirty (30) days after delivery of such Earnout Dispute Notice. Purchaser shall (i) provide Seller and its representatives with reasonable access, upon reasonable advance notice, during normal business hours to the books, records (including work papers, schedules, memoranda and other documents) and supporting data used in the preparation of the Earnout Statement, in each case for purposes of their review of the Earnout Statement, and Purchaser shall provide such information to the extent in its possession or control, within ten (10) days of Seller's request and (ii) reasonably cooperate with Seller and its representatives in connection with such review.

---

[1] References to the Purchase Agreement are to the Purchase Agreement as amended in March 2022 and January 2023.

Dkt. 8-1 at 40 (Section 1.7(f)).

> If Purchaser [Caregiver] and Seller [Compass] are unable to resolve the Earnout Dispute within the 30-day period after receipt of the Earnout Dispute Notice, Purchaser and Seller shall jointly engage an independent audit firm mutually agreed to by Purchaser and Seller or, in the absence of such mutual agreement within a further period of five (5) business days, to a nationally recognized independent audit firm selected by lot after eliminating Purchaser's principal outside accountants and Seller's principal outside accountants (such selected firm, the "Audit Firm"). The Audit Firm's function shall be to serve as expert and not an arbitrator with respect to the specific items in dispute as identified in the Earnout Dispute Notice, and shall not make separate determinations on any other elements of each position. . . .  The Audit Firm's decision with respect to the Earnout Payment and the Earnout Statement shall be final and binding upon the Parties, and judgment may be entered on the award. . .

Dkt. 8-1 at 40 (Section 1.7(g).

To summarize, the Earnout Dispute process created by sections 1.7(f) and (g) is as follows: Compass must submit a written notice disputing the Earnout Statement within fifteen days of receipt of the Earnout Statement, and then the parties have thirty days thereafter to attempt to resolve the Earnout Dispute.  *Id.* § 1.7(f).  Compass has the right to inspect Caregiver's books "for purposes of their review of the Earnout Statement".  *Id.*  If no resolution can be reached, the parties must engage an independent audit firm.  *Id.* § 1.7(g).  That firm will allow the parties to present their positions and may conduct a conference. The firm as well as the parties can "reasonably request" the documentation and information "to review the Earnout Statement and resolve the Earnout Dispute."  *Id.*  Within thirty days of its appointment, the audit firm will render a final and binding judgment.  *Id.*

Compass sent a timely dispute notice as required by Section 1.7(f) and shortly thereafter brought this case. Dkt. 8 at 4 ¶ 24. Compass alleges that Caregiver breached the Purchase Agreement by "refusing to allow inspection of its books and records" and by "improperly calculating the Earnout Statement." Dkt. 1; dkt. 8 at 5 ¶ 36. Compass seeks a declaratory judgment "that Compass has the right to immediately inspect Caregiver's books and records." Dkt. 8 at 4–5. Caregiver moved to dismiss the Complaint, or in the alternative, stay the case, arguing that the dispute is subject to mandatory arbitration. Dkt. 16 at 1–2.

## II.
## Applicable Law

The Federal Arbitration Act ensures that "written provision[s] in . . . contract[s] evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction" are valid and enforceable. 9 U.S.C. § 2. The FAA "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 337, (2011)) (cleaned up).

"To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore*, 666 F.3d at 1032. "Once it is clear, however" that a contract "provides for arbitration of some issues . . . any doubt about the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id.* (citing

4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). *See also United Nat. Foods, Inc. v. Teamsters Loc. 414,* 58 F.4th 927, 934 (7th Cir. 2023) (discussing the "rebuttable presumption of arbitrability"). Put another way, courts should "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Bhd. of Elec. Workers Loc. 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014) (cleaned up). "[T]here is certainly doubt regarding the scope of the arbitration clause" when "[i]t is subject to several reasonable interpretations." *See also Cnty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 822 (7th Cir. 2006), *as amended* (Apr. 11, 2006). If the arbitration clause applies, the case must be stayed pending arbitration. *Smith v. Spizzirri*, No. 22-12-18, --- S. Ct. ----, 2024 WL 2193872 at *2 (May 16, 2024)[2]; 9 U.S.C. § 3.

### III.
### Analysis

It's undisputed that under the Purchase Agreement, disputes over Caregiver's calculation of the Earnout Statement and Earnout Revenue are subject to mandatory arbitration, dkt. 8 ¶ 36; dkt. 16 at 4-6; dkt. 27.[3] The

---

[2] Because the Supreme Court's recent decision in *Smith* requires a stay instead of dismissal if the arbitration clause applies, the Court construes Caregiver's motion as only a motion to stay. Dkt. 16.

[3] Section 1.7(g) both describes the Audit Firm's role "as expert and not arbitrator with respect to the specific items in dispute as identified in the Earnout Dispute Notice" and mandates that the Audit Firm's decision is "final and binding." Dkt. 8-1 at 40. Caregiver argues that the "final and binding" language demonstrates that the parties had a binding arbitration agreement. Dkt. 16 at 4. Compass does not respond to this argument, and instead concedes that the Purchase Agreement includes an arbitration

parties instead dispute only whether Caregiver's contractual duty to permit Compass to inspect its books and records is within the scope of that arbitration provision. Dkt. 27 at 2.

Compass argues that (1) the Purchase Agreement requires the inspection of Caregiver's books and records before the dispute is "ripe for arbitration," and (2) inspection disputes fall outside the arbitration clause's scope. *Id.* at 3–4. Caregiver argues that Compass's inspection right claim is subject to mandatory arbitration. Dkt. 32 at 2.

The plain language of the Purchase Agreement does not support Compass's first argument—that its inspection of Caregiver's books and records is a condition precedent to mandatory arbitration over an Earnout Dispute. Section 1.7(g) requires the parties to engage "an independent audit firm" if they "are unable to resolve the Earnout Dispute within the 30-day period after receipt of the Earnout Dispute Notice." Dkt. 8-1 at 40. Nothing else is required to trigger mandatory arbitration. *See id.* So, in short, the parties' inability to resolve the Earnout Dispute within the designated period is the sole requirement for the arbitration clause to apply. Dkt. 8-1 at 40.

Compass next argues that its contractual right to inspect Caregivers' books and records is outside the scope of the arbitration clause and therefore is not subject to mandatory arbitration. The inspection-right provision,

---

agreement. Dkt. 27. The parties therefore agree that earnout disputes are subject to mandatory arbitration and any contrary argument is waived. *Weinstein v. Schwartz*, 422 F.3d 476, 477 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver.").

6

however, appears in the middle of the Purchase Agreement section that creates the framework for resolution of Earnout Disputes. *Id.* The provision's content is similarly focused on the Earnout Dispute—it requires Caregiver to provide Compass with "books, records. . . and supporting data used in the preparation of the Earnout Statement." *Id.* And the "purpose[]" of the inspection right is expressly to allow the parties' "review of the Earnout Statement." *Id.* Finally, the arbitration process allows the parties and the arbitrator to continue to request documentation from each party, *id.*, and it would be strange and inefficient for the Purchase Agreement to place the initial inspection of documents outside the arbitration process when later requests for documents are squarely within the arbitration, *see Cnty. of McHenry*, 438 F.3d at 823 (rejecting a contractual reading that would "narrow[ ] the arbitration provision beyond what would be a logical result").

    The language, structure, and purpose of the arbitration provision therefore show that the presumption of arbitrability is not rebutted here, so the inspection right is within the scope of the arbitration clause. *United Nat. Foods, Inc.*, 58 F.4th at 934; *Int'l Bhd. of Elec. Workers Loc. 2150*, 762 F.3d at 594.

    Compass nevertheless relies on a 2007 Court of Chancery of Delaware decision that held that an inspection right was not arbitrable. Dkt. 27 at 4 (citing *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417 (Del. Ch. 2007)). In that case, the defendants sought to compel arbitration of the plaintiff's request for inspection, and the court held that the parties' inspection

7

dispute was not arbitrable. *NAMA Holdings*, 922 A.2d at 424–430. But the arbitration clauses in *NAMA Holdings* are too different for that case to support Compass's argument here. *See id.* at 432–34. First, the contract itself in *NAMA Holdings* expressly said that "disputes arising out of the agreement are only arbitrable if expressly required by the terms of the Agreement." *Id.* Second, Compass points to the Delaware Court's decision that an arbitration provision committing "any dispute arising out of certain exhibits to the contract" to arbitration did not encompass the inspection right dispute. *Id.* at 424, 433; Dkt. 27 at 4. But in *NAMA Holdings*, the inspection right was much more general than the inspection right here. 922 A.2d at 424. Finally, in *NAMA Holdings,* the Delaware Court also rejected application of another arbitration clause that was in a different contract and was "not to any degree intertwined with" inspection rights. *Id.*

      Here, by contrast, Compass is seeking to enforce a specific inspection right that cannot be separated from the Earnout Dispute that must be arbitrated. Indeed, unlike in *NAMA Holdings,* the inspection right here would lose its purpose if separated from the Earnout Dispute. *See NAMA Holdings*, 922 A.2d at 433 (recognizing that NAMA's "right to inspect books and records" stood alone, separate from issues that must be arbitrated); *Gore*, 666 F.3d at 1036 (arbitrability "depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause."). In short, the language, structure, and purpose of the arbitration

8

provision here shows a close connection between the arbitration provision and the inspection right that was not present in *NAMA Holdings*.

The presumption of arbitrability therefore is not rebutted here. *United Nat. Foods, Inc.*, 58 F.4th at 934; *Cnty. of McHenry*, 438 F.3d at 821 ("[D]oubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration.").

## IV.
## Conclusion

Defendant's motion to stay is **GRANTED**. Dkt. [16]. The action is **STAYED** pending arbitration. 9 U.S.C. § 3; *Smith*, 2024 WL 2193872 at *2. The parties **SHALL FILE a status update by September 27, 2024,** on the status of arbitration.

**SO ORDERED.**

Date: 5/22/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel